# City of Louisville v. Hart's Admr.

(Decided April 18, 1911.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Personal injuries resulting in death—Action concerning.—Sec-6, of the Kentucky Statutes gives to the personal representative of a person killed by a wrongful act the exclusive right to maintain an action in damages for his death.

2. Settlement of claim—After an action has been instituted by the personal representative, the beneficiaries of the recovery cannot settle the claim and defeat the right of the personal representative to prosecute the action to a judgment.

3. Same.—Evidence of a settlement made with the beneficiary is not competent for any purpose as a defense in an action brought by the administrator.

4. Rights of person paying money to beneficiary.—A defendant who pays money to a beneficiary, after an action has been brought against him by the personal representative, may if there is a recovery have credit on the amount due to the beneficiary out of the recovery by the amount paid.

5. Settlement with one tort feasor.—To be a satisfaction of a claim afterwards asserted by an injured party or by his personal representative, must be made with a person who has the legal right to settle.

6. Personal representative—Validity of appointment.—When the appointment of a personal representative is questioned, the objection must be pointed out in a pleading.

7. Proximate cause—Defintion of.—The proximate cause of an event must be understood to be that which in a natural and continuous sequence, unbroken by any new independent cause, produces that event, and without which it would not have occurred.

8. Same.—Instruction defining the meaning of proximate cause is not necessary.

9. Concurring causes of negligence.—Actions.—Two agencies acting entirely independent of the other may jointly and concurrently be treated as the proximate cause of an injury when it would not have happened except for the concurrence at approximately the same time and place of the two negligent acts and joint or separate actions may be maintained against each agent contributing to the injury.

LEON P. LEWIS, CLAYTON B. BLAKEY and HUSTON QUIN for appellant.

EDWARDS, OGDEN and PEAK for appellee.

Opinion of the Court by Judge Carroll—Affirming.

Edward Hart, while driving a one-horse wagon on Payne street in the city of Louisville, was thrown from it in front of a street car and killed by the car. To recover damages for his death, the administrator brought an action against the city of Louisville and the Louisville Railway Company, charging that the accident that resulted in his death was due to the negligence of the city in failing to keep the street at the point of the accident in a reasonably safe condition for public travel, and to the high and dangerous rate of speed at which the street car was running and the negligence in its operation.

During the trial, the lower court dismissed the action against the railway company, but the case proceeded against the city, and a judgment was obtained against it for four thousand dollars.

A number of grounds for reversal are presented which we will consider in the order they are stated by counsel for the appellant.

Edward Hart died on the 25th day of August, 1906, and on the 5th day of September, 1906, Christ Schneider, the plaintiff in this action, was appointed administrator of his estate. It appears that Edward Hart left as his only heir at law his father, Patrick Hart, and on the 18th day of September, 1906, the Louisville Railway Company obtained from Patrick Hart the following receipt:

"Received of the Louisville Railway Company this the 18th of September, 1906, the sum of one thousand dollars, in full compromise, payment, satisfaction and discharge of all claims and demands which I have against the street railway company. its employes or agents for or on account of any and all damages, injury, expenses or loss which I have sustained by reason of the death of Edward Hart, my son, caused by the alleged negligence of its employes or agents in running a car on or against said Edward Hart."

We are informed by counsel that it was the introduction of this receipt by the railway company on the trial that induced the trial judge to dismiss the action as to it. (Hart'sAdmr. v. Louisville Railway Co., 142 Ky., 263.) But whatever the cause that influenced the dismissal of the action it is now the contention of the city that as Pat-

rick Hart, the only heir at law of Edward Hart, and the person to whom any recovery on account of his death would go, settled with one of the joint wrongdoers, that this settlement was a satisfaction of all claim for damages against both of them, and, therefore, a bar to the action against the city as well as the action against the railway company; or, in any event, this sum should have been deducted from any recovery by the administrator against the city. This contention brings up for consideration the question, whether or not Patrick Hart had the legal right after an administrator was appointed to settle with the railway company any claim for damages that might have been asserted against it on account of the death of Edward Hart. If he did not have such legal right, then the settlement made by him was not a bar to a recovery against either the street railway company or the city by the administrator, and so it should not be treated as a satisfaction of the claim for damages arising on account of his death against either wrongdoer.

Section 6 of the Kentucky Statutes, under which the action was prosecuted by the administrator, and which was enacted in pursuance of section 241 of the Constitution, reads:

''Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then in every such case, damages may be recovered for such death from the person or persons, company or companies, corporation or corporations, their agents or servants, causing the same, and when the act is willful or the negligence is gross, punitive damages may be recovered, and the action to recover such damages shall be prosecuted by the personal representative of the deceased. The amount recovered, less funeral expenses and the cost of administration, and such costs about the recovery, including attorney fees as are not included in the recovery from the defendant, shall be for the benefit of and go to the kindred of the deceased in the following order: *   *   *''

Then follows a description of the persons to whom the recovery shall go, and the order of precedence in which they are entitled to it.

It will of course be readily conceded that the exclusive right to maintain an action under this section is vested in the personal representative, unless it should be that

he refused to bring the action and then we have no doubt that it might be maintained by those entitled to the recovery. Leach v. Owensboro Ry. Co., 137 Ky., 292; McLemore v. Sebree Coal & Mining Co., 121 Ky., 53. The personal representative is further authorized by section 3882 of the Kentucky Statutes "to compromise and settle any claim or demand for damages growing out of injury to or a death of a decedent." McFarland v. L. & N. R. Co., 130 Ky., 172; Leach v. Owensboro Ry. Co., 137 Ky., 292. As the statute confers upon the personal representative, and no one else, the right to maintain an action in tort for damages resulting from death, and also gives him the authority to settle and compromise any claim for such damages, we are of the opinion that when a personal representative has been regularly appointed, his authority is exclusive and the power is lodged in him alone subject to the exception before mentioned to prosecute the action to a conclusion and to settle or compromise the claim. It results from this that neither the beneficiaries of the recovery nor any other person can divest the personal representative of this statutory authority. If the beneficiary of the recovery could by settling the claim oust the personal representative of his jurisdiction, the effect would be that the beneficiary could control the disposition of the action and strip the personal representative of the power lodged in him by the statute.

The Supreme Court of Iowa in Christie v. Chicago, R. I. & P. R. Co., 104 Iowa, 707, 74 N. W., 697, and the Supreme Court of Wisconsin in McKeigue v. Chicago & N. W. R. Co., 110 N. W., 384, ruled that a settlement by the beneficiary before the appointment of an administrator would defeat an action by the personal representative; but the right of the beneficiary to settle after the appointment of an administrator and thereby defeat an action brought by the administrator was not presented or decided in either of these cases. The Indiana Supreme Court in Yelton v. Evansville & Ind. R. Co., 134 Ind., 414, 21 L. R. A., 158, held that the beneficiary after suit had been commenced by an administrator could not compromise a claim for damages so as to defeat a recovery by the personal representative. In this State the question is squarely presented for the first time. It was mentioned in Meyer v. Zoll, 119 Ky., 480, but not being nec-

essary to a decision of the case was not disposed of. It may be conceded that the personal representative is merely the trustee of the beneficiary, and that generally the sole beneficiary of a fund may control the disposition of it, and can dictate to the trustee the course he will pursue in reference to it or take the matter entirely out of his hands. But, we regard the legislative declaration upon this subject as controlling. We think there can be no doubt that it was competent for the Legislature to direct what persons might bring, as well as settle or compromise, actions like this, and as the Legislature has indicated the person, that no other person should in the face of this legislative expression have the right to usurp the authority conferred upon the personal representative. If Patrick Hart had brought an action against the railway company to recover damages for the death of his son, the court upon motion would at once have dismissed it upon the ground that he had no right to maintain it. And yet it is said that he has the right to prevent the only person having authority to institute the action from prosecuting it to a conclusion. There would be little reason for giving the personal representative the exclusive right to institute and maintain an action like this if some other person could defeat his authority by controlling the conduct of the case. Under our statute the additional reason for denying to a beneficiary the right to settle the claim for damages and thereby defeat a recovery in an action by the personal representative exists in the fact that the recovery is charged with certain expenses that the personal representative would be obliged to discharge but that the beneficiary might not be inclined to pay and could not be held responsible for. But we do not put our decision that the beneficiary can not settle the claim and defeat the right of the personal representative upon this ground. We rest it entirely upon the ground that as the statute designates the personal representative as the person who must bring the suit, and who may settle and compromise the demand, no other person can institute the action or settle or compromise it after he has been appointed. We do not hold that the sole beneficiary might not settle before administration was granted or that such a settlement in good

faith would not bar an action by a subsequently appointed administrator.

It follows from these views that the acceptance of satisfaction of the claim by Patrick Hart did not affect the right of the administrator to prosecute the suit. Nor was evidence of the settlement made with Patrick Hart competent for any purpose as a defense in the action brought by the administrator. If persons against whom claims like this are asserted see proper in the face of the plain declaration of the statute to settle them with persons who have no right under the statute to make any agreements that would satisfy the liability, they do so at their own risk, and it is immaterial whether the settlement was made in good faith or not or that it is satisfactory to the person who received the money paid under it. Having said this much, we also think that if money is paid on account of a demand like this to a person who is entitled to all or a part of the recovery, that the party making the payment should have credit by it on the amount due out of the recovery by the personal representative to the person to whom the payment was made; but, this is a matter that must be settled between the parties independent of the action brought by the personal representative, and can only arise after there has been a recovery in his behalf. It is a private personal matter between the person paying the money and the person receiving it. Therefore, the city is not entitled to any credit by the amount paid by the railway company to Patrick Hart.

This view of the case renders it unnecessary to consider or determine what effect a valid settlement with the railway company would have had on the prosecution of the action against the city. Instructive opinions upon the effect of accepting satisfaction from one of several joint wrong-doers may be found in United Society of Shakers v. Underwood, 11 Bush, 265; Louisville & Evansville Mail Co. v. Barnes, 117 Ky., 860; Thomas v. Maysville St. Ry. Co., 124 S. W., 398. But in all events it is clear that a payment by a tort feasor in order to be a satisfaction of any claim afterwards asserted by an injured party or by his personal representative must be made to a person who had the legal authority to settle the claim.

Another contention made is that Schneider's appointment as administrator was invalid, and, therefore, he had no right to maintain the action. It is said in the brief of counsel for the city that the question of his authority to maintain the action was raised in the following motion, made by the city during the trial, to dismiss the petition:

"The defendant, City of Louisville, thereupon moved the court to dismiss the petition herein as to it, to which the plaintiff objects; the court being advised, overrules the motion, to which the defendant excepts."

Assuming that this motion was based on the ground that Schneider's appointment was irregular or void, manifestly the validity of his appointment could not be assailed in this manner. The issue should have been raised by a pleading pointing out the objections to his appointment or qualification or his right to prosecute the action. Jacob's Admr. v. L. & N. R. Co., 10 Bush, 271; Leach v. Owensboro R. Co., 137 Ky., 292; Watkins v. Watkins, 124 S. W., 301; Buckner v. L. & N. R. Co., 120 Ky., 600; Hall v. L. & N. R. Co., 19 Ky. Law Rep., 1529.

Another objection is that the trial court erred in overruling the motion of the city for a continuance. The record shows that when the case was called for trial, and counsel for the plaintiff had stated the case, the court on motion of the railway company dismissed the petition as to it, "Thereupon the defendant city moved the court for a continuance, which was overruled." The record does not disclose any ground for a continuance, nor do we know from the record why the motion for a continuance was made. This being so, it is obvious that we can not determine whether the court erred or not in overruling the motion. The mere fact that the action as to the railway company was dismissed was not in itself sufficient to warrant a continuance as to the city.

Another reason for reversal is that the condition of the street was not the proximate cause of the death of Hart, and, therefore, the city was not liable. The question of proximate cause in negligence cases has come before the courts of the country in innumerable cases, and as a result there is a large body of law devoted to its consideration. But there is really no difference of opinion

as to the general principles upon which this doctrine rests. It is agreed on all sides that the damage suffered must, as stated by Cooley on Torts, page 68—

"Be the legitimate sequence of the thing amiss. * * * In other words, the law always refers the injury to the proximate, not to the remote cause. The explanation of this maxim may be thus given: If the injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause and refuse to trace it to that which was more remote."

Or, as stated by Shearman & Redfield on Negligence, section 26:

"The proximate cause of an event must be understood to be that which in a natural and continuous sequence, unbroken by any new independent cause produces that event, and without which that event would not have occurred. Proximity in point of time or space however is no part of the definition. That is of no importance, except as it may afford evidence for or against proximity of causation, that is, the proximate cause which is nearest in the order of responsible causation."

The difficulty has always come up, when it has been attempted to apply these principles to a state of facts presenting more than one contributing cause or act that resulted in the wrong or injury complained of. Of course, when there is only one cause to which the injury or wrong is directly traceable, as when a person intentionally shoots another, or where a passenger on a railway train is injured by a defect in the car in which he is riding, there is no difficulty in determining what was the proximate cause of the injury. But, in cases in which there is more than one cause or act connected with or concerned in producing the injury, the books are full of decisions determining which one of the causes or acts was the proximate cause. As a result of the infinite variety of cases presenting this question, it is easy to find authority that will apparently support each side in almost any controversy in which a doubtful question arises. To attempt to reconcile these cases would be the height of folly. In truth, when carefully studied, there is really

little conflict between them. The apparent conflict grows out of the difference in facts to which must be applied the principle that controls. Or, as stated by Justice Miller, in Louisiana Mutual Ins. Co. v. Tweed, 7 Wallace, 44, 19 L. Ed., 65, in speaking of this subject:

"It would be an unprofitable labor to enter into an examination of these cases. If we could deduce from them the best possible expression of the rule, it would remain after all to decide each case largely upon the special facts belonging to it, and often upon the very nicest discrimination."

No case can be confidently cited as authority unless its facts are similar to the facts of the case under consideration, and so, it would not be useful to review the many cases cited by counsel for appellant, as few of them are directly in point. To again restate briefly, we have this state of facts: Hart on account of defects in the street that rendered it unsafe for travel was thrown from his wagon and fell on the street car track immediately in front of an approaching car that was running at a dangerous and negligent rate of speed, and was run over and killed by the car. Now, we may assume that if the street had been reasonably safe he would not have been thrown from his wagon, and of course would not have been killed. We may further assume that if the street car had been operated with ordinary care, that it could have been stopped before striking him, and so although the defective condition of the street caused him to fall on the track, he would yet have escaped injury except for the negligence in the operation of the car. We have then two approximately concurring acts of negligence by two independent agencies that brought about his death. Neither act of negligence in itself, without the co-operation of the other, would have harmed him. On the one hand, however fast the car was going, unless he had been thrown in front of it, he would not have been killed. On the other hand, although thrown on the car track by the bad street, he would have escaped death if it had been prudently operated. The question now is, which of these acts of negligence was the proximate cause of his death. We think that both of them may be so treated. Two agencies acting entirely independent of the other as in this case may jointly and concurrently be the proximate

cause of an injury, when it would not have happened except for the concurrence at approximately the same time and place of the two negligent acts. Thus, in Cooley on Torts, page 78, it is said:

"If the damage has resulted directly from concurrent wrongful acts or neglects of two persons, each of these acts may be counted on as the wrongful cause and the parties held responsible either jointly or severally for the injury."

In Shearman & Redfield on Negligence, section 39, the rule is thus stated:

"It is also agreed that if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which concurring with his own negligence produced the damage."

In section 346, the same authors say:

"The general rule in all States is that where two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate, the one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible, the municipality is liable, provided the injury would not have been sustained but for such defect."

As illustrative cases on the subject treated of by these standard authors, we mention out of a number the following:

In Louisville Home Telephone Co. v. Gasper, 123 Ky., 128, the facts were these: Gasper while walking in a public alley adjoining his home in the city of Louisville was knocked down and crushed by and under a heavy wagon owned and operated by Dressle. The Louisville Home Telephone Company maintained in the alley a telephone pole, to which it negligently strung and maintained a guy wire, running obliquely from the top thereof to a block in the ground, so as to form and cause a dangerous obstruction to pedestrians and vehicles using or passing through the alley. The wagon of Dressle, while

being driven through the alley by his servants in a negligent manner, ran upon and against appellant's guy wire, which caused the wagon to be overturned and thrown upon Gasper, resulting in his injuries.    Upon these facts the contention of the telephone company was that Gasper was injured solely by the wagon falling upon him, and that its negligence if any was too remote to have produced the injury without an intervening cause, and, therefore, its negligence was not the proximate cause of the injury.    But the court, rejecting this view, said:

"If the telephone company was negligent as to the manner in which its guy wire was anchored, and it constituted a dangerous obstruction, that is, one that was likely to result in injury to others from an intervening cause, which though not in fact anticipated by appellant would not have happened but for its earlier negligence, it can not escape liability, because its negligence would in such case be the proximate cause of the injury. *   *   * It is also very well settled that when an injury is caused by two causes concurring to produce the result, for one of which the defendant is responsible and not for the other, the defendant can not escape responsibility.    One is liable for an injury caused by the concurring negligence of himself and another, to the same extent as if for one caused entirely by his own negligence."

In Walrod v. Webster County, 110 Iowa, 349, 47 L. R. A.,480, the court had before it a case in which two independent causes contributed to the injury, and said:

"When two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate, the one being a culpable defect in the righway and the other some occurrence for which neither is responsible, the municipality is liable provided the injury would not have been sustained but for such defect. *   *   *    The mere fact that some other cause operates with the negligence of the defendant to produce the injury does not relieve it from liability.    His original wrong concurring with some other cause, and both operating approximately at the same time and producing the injury, makes him liable, whether the other cause was one for which the defendant was responsible or not."

In Lake v. Milliken, 62 Maine, 240, 16 Am. Rep., 456, it appears that the defendants negligently piled boards in the traveled part of a highway, and that a stranger passing along with a wagon loaded with barrels ran over these boards, producing a rattling noise, which frightened the plaintiff's horse, causing him to throw the plaintiff from his wagon and injure him. In holding the defendants liable, the court quoted with approval from Ricker v. Freeman, 50 N. Hamp., 420, 9 Am. Rep., 267, the following statement:

"We think the principle is clearly established that negligence may be regarded as the proximate cause of an injury, of which it may not be the sole and immediate cause. If the defendant's negligent, inconsiderate and wanton though not malicious act concurred with any other thing, person or event, other than the plaintiff's own fault to produce the injury, so that it clearly appears that but for such wrongful negligent act the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible even though his negligent wrongful act may not have been the nearest cause in the chain of events or the order of time."

Applying to the facts of this case the principles announced we have no difficulty in reaching the conclusion that the defective street was one of the proximate causes that resulted in the death of Hart, and, therefore, an action would lie against the city as well as the street railway company.

Another error assigned is that the court should have defined "proximate cause." In our opinion a definition of "proximate cause" would have confused rather than enlightened the jury. They were told by an instruction that—

"If they believe from the evidence that the dangerous and defective condition of Payne street at or about where the collision occurred, if it was dangerous or defective, caused the plaintiff's decedent to be thrown from his wagon and upon the track of the Louisville Railway Company and under one of its cars, whereby he was so mangled and injured that he died therefrom, then the law is for the plaintiff as against the defendant city of Louisville, and the jury should so find."

This instruction left it to the jury to say whether or not the defect in the street was the cause of the injury complained of, and we do not think an instruction defining or attempting to define "proximate cause" would have aided the jury in reaching a correct verdict. The trial court correctly determined as a matter of law that the city was liable if the defect in the street brought about the death of Hart, and left to the jury the question whether it did or not.

It is also insisted that the jury should have been instructed as to the alleged negligence of the Louisville Railway Company and its affect on the liability of the city. The negligence of the railway company should not have been allowed to effect the liability of the city. Its liability depended entirely upon its own negligent acts, and not on the negligent acts of the railway company.

Another error suggested is that as the petition alleged specifically the manner in which Hart was thrown on the street car track, the jury should have been confined to these facts in its consideration of the case. An examination of the record satisfies us that the evidence supported the averments of the petition, and the instructions presented the issues made by the pleadings.

On the whole case we see no reason for disturbing the verdict and the judgment is affirmed.

The whole court sitting.